### J. D. BIGGS & CO. v. J. V. PERKINS.

The rule *caveat emptor* does not apply where the vendor uses any device to put the purchaser off his guard, or resorts to artifice or trick to take advantage of him, although "mere silence" will not make the vendor liable.

(*Brown* v. *Gray*, 6 Jones, 108, cited and approved.)

CIVIL ACTION, tried before his Honor Judge MOORE, at Spring Term, 1876, of EDGECOMBE Superior Court.

The action was begun in the Superior Court of MARTIN County and removed to the Superior Court of EDGECOMBE, upon affidavit by defendant.

The following evidence was offered on the trial in behalf of the plaintiffs as appears from the record in the case.

On the 14th of December, 1875, one Dennis Daniel, a negro laborer, offered for sale to plaintiffs, who were merchants in the town of Williamston, two bales of cotton. Plaintiffs examined it, cutting open the bagging and taking out some of the cotton and inspecting it in the ordinary way. Plaintiffs purchased the two bales at 11½ cents per pound.

On December 16th, said Daniel brought to plaintiffs for sale two additional bales. They examined it in the same way and bought it at 12 cents per pound. Daniel made no representation in regard to either of the two lots. On December 20th, he brought to plaintiffs four bales and enquired of them what they were paying for "good cotton." Plaintiffs replied 11½ cents for good cotton. Daniel then said that he knew this was good cotton for he had raised it. Plaintiffs examined the cotton in the ordinary way and found all the cotton more or less stained, one bale being very badly stained. They called Daniel's attention to that bale and he said he believed the ginner had substituted another bale of cotton for his. Plaintiffs bought the cotton, paying 11 cents

for two bales, 11¼ cents for another, and 9 for the remaining one. In January plaintiffs discovered that the eight bales of cotton were ginned through a " Linter " from cotton seed after they had passed through a gin and were called " second ginning " or " short staple cotton." For the first two lots of cotton plaintiffs gave their due bill to Daniel in part payment and upon the purchase of the last lot they gave him a draft on Norfolk in payment of the balance due.

Upon discovery of the quality of the cotton plaintiffs ascertained that defendant has sold it through Daniel, and they demanded of him a return of the purchase money, offering to return the cotton to him. This offer defendant refused to accept.

J. D. Biggs, one of the plaintiffs, testified that he purchased the cotton ; that he did not examine it to test its staple ; that one of the chief tests of cotton was its staple, but that the staple through all that section of country was so uniform that neither he nor other buyers in the Williamston market ever examined cotton to try the staple unless attention was called to it; that he had never seen any cotton which had been ginned through a " Linter," and that none had ever been brought to Williamston for sale before ; that this cotton had all the appearance of ordinary cotton.

D. D. Simmons, another of the plaintiffs, testified that he was present when cotton was purchased ; that he judged cotton by appearance of lint and not of the staple, and that " Linter " cotton looks like ordinary cotton ; that he never saw any before.

C. B. Hassell, witness for plaintiff, testified that he had seen a sample of the cotton and that he could not have discovered by looking at it that it was " Linter " cotton ; that he tested the value of cotton by its color and cleanliness only because the staple of all cotton in that market was uniform and it was not usual for buyers to examine it. He further testified that Williamston was twenty-two miles from Pac-

tolus, where defendant resided, and Pactolus was only three-quarters of a mile from a landing on Tar River by which steamers passed daily making connection with the Northern markets ; that he had never known or heard of defendant sending any other cotton to Williamston for sale ; that Williamston was a better cotton market than either Greenville or Washington, but not better than Tarboro, which is thirty-eight miles by the river above Pactolus.

Two other witnesses for plaintiff testified that they had never known defendant to send cotton to Williamston for sale before.

It was in evidence that the eight bales of cotton sold for $6\frac{1}{4}$ cents per pound in Norfolk in the following March, but inferior cotton had declined two cents from December to March. It was also in evidence that defendant in a conversation with J. E. Moore, who made the demand upon him for plaintiffs for a return of the purchase money, said that he had done plaintiffs no wrong ; that he had employed Daniel to sell the cotton for him, and had instructed him to show a fair sample; and, if he could not get ten cents for it, to carry it to Hassell, and get him to ship it.

There was some other evidence of the same tenor as the foregoing. It was admitted on the trial that the cotton had been made by defendant with his " linter," and the price paid by plaintiffs was full price for ordinary cotton.

His Honor being of opinion that the plaintiffs, upon the foregoing evidence, were, in no view of the case, entitled to recover anything of the defendants, plaintiffs submitted to a non-suit and appealed.

*Howard & Perry*, for appellants.
*W. H. Johnston*, contra.

PEARSON, C. J. His Honor intimated the opinion that,.

taking the evidence in the view most favorable for the plaintiffs, they were not entitled to recover.

This assumes that the article sold was not cotton, in the sense understood by dealers in cotton. That the defendant was fixed with " the *scienter*," and that the plaintiffs bought the article, and paid full price for it, as if it was cotton, under the belief that, in point of fact, it was cotton. His Honor intimated this opinion on the force of the rule, " *caveat emptor*," and the case turns upon the application of that rule. The rule of the civil law is, " a sound price implies sound property ; and, if the article sold is not sound, and is bought and paid for as if it was, the vendor is bound to make compensation, whether he knew f the unsoundness or not," on the ground that the vendor cannot honestly keep the full price after he has notice that the article, by reason of its unsoundness, was not worth the money which he had received for it.

The rule of the common law is " *caveat emptor* "—if the article sold is not sound, and if the vendee is fixed with " the *scienter*." Still, if the vendee could have discovered the unsoundness by the exercise of ordinary diligence, he must submit to the loss as a result of his own folly, and the vendor is allowed to retain his ill-gotten gain.

The one rule favors good morals—the other rule favors free traffic. Which is the wiser of the two it is not ours to say, for it is settled that " *caveat emptor* " has been adopted as the law of this State. *Brown* v. *Gray*, 6 Jones, 103.

All we have to do is to fix the limits of the rule, and to decide whether his Honor erred in his opinion that it defeated the plaintiffs' cause of action.

The rule is limited to this extent : It does not apply when the vendor has used any device to put the purchaser off of his guard, although *mere silence* will not make him liable. In our case there was not *mere silence* but there was evidence tending to show that the defendant resorted to artifice

and trick in order to cheat the plaintiffs, and to take advantage of the fact that it was not the custom of buyers in the town of Williamston, owing to the uniformity of the staple of cotton raised in that locality, to examine cotton offered for sale or to test its staple, but only to see that it was free of dirt and trash and was not stained. The article sold was packed and baled in like manner and form as if it was cotton—it was sent to a distant town, at which place the invention used by the defendant had not been heard of. These and the other circumstances tend to show that it was the purpose of the defendant to take advantage of the fact that the plaintiffs were off of their guard in respect to the *new article* which he was putting upon the market as cotton. There is error.

PER CURIAM.          *Venire de novo.*